**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| IVAN SAMANIEGO,<br><br>          Plaintiff,<br><br>     v.<br><br>CALIFORNIA DEPARTMENT OF CORRECTIONS AND REHABILITATION, et al.,<br><br>          Defendants. | Case No.: 1:21-cv-0839 JLT BAK (EPG)<br><br>ORDER GRANTING DEFENDANTS' MOTION TO DISMISS<br>(Doc. 14)<br><br>ORDER GRANTING LEAVE TO AMEND THE COMPLAINT |

Ivan Samaniego asserts his civil rights were violated while he was incarcerated at the California Correctional Institution- Tehachapi. Samaniego contends he witnessed the assault of an inmate by CCI correctional officers and suffered retaliation for coming forward as a witness. He asserts the retaliatory acts continued after he was transferred to Kern Valley State Prison. Thus, Samaniego seeks to hold correctional officers liable for violating his rights under the First Amendment and Eighth Amendment. In addition, Samaniego seeks to hold W.J. Sullivan and Christian Pfeiffer, policymakers for CCI-Tehachapi and KVSP, liable for the constitutional violations.[1] (*See generally* Doc. 12.)

Defendants Sullivan and Pfeiffer seek dismissal of the claims pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, asserting Plaintiff fails to state a claim for supervisor liability and suit

---

[1] Defendant Pfeiffer is erroneously identified in the First Amended Complaint as "Pfeffer." (*See* Doc. 14 at 3, n.2)

1

against Defendants in their official capacity is not proper. (Doc. 14.) Samaniego opposes the motion, alleging the facts alleged are sufficient to support his claims. (Doc. 16.) The Court finds the matter suitable for decision without oral argument, and the motion is taken under submission pursuant to Local Rule 230(g). For the reasons set forth below, Defendants' motion to dismiss is **GRANTED**.

## I.     Background and Plaintiff's Allegations[2]

Samaniego alleges that he "witnessed the unprovoked beating by several CCI Correctional Officers of fellow CCI inmate, Joe Nino, outside of Samaniego's cell" on December 31, 2018. (Doc. 12 at 7, ¶ 27.) According to Samaniego, "once [he] came forward as a witness to this particular assault against Nino, certain CCI Correctional Officers aggressively initiated a pattern of harassment, abuse and retaliation against Samaniego." (*Id.*)

Samaniego asserts he "was attacked and brutally beaten by several CCI Correctional Officers" on May 24, 2019. (Doc. 12 at 7, ¶ 28.) He alleges Officers Mumby, Castillo, Weiss, Gray, Lugue, Perez, Castellanos, and Zavaleta—along with unidentified "Doe Defendants"— participated in a "cell extraction" that was staged and "a complete fabrication." (*Id.* at 8, ¶ 31.) Rather, Samaniego contends the correctional officers "body slammed, punched and kicked Plaintiff without justification… [and] with the intent to cause Plaintiff's death." (*Id.*) Plaintiff alleges:

> The Correctional Officers continued to beat Plaintiff after he was on the floor and unable to defend himself. These same named Defendants prepared a narcotic liquid substance on a CDCR – issued baton and raped and tortured Plaintiff by forcefully inserting this instrument inside Plaintiff's rectum. The intent of the Individual Defendant perpetrators was to insert this foreign narcotic substance into Plaintiff's system, take Plaintiff back to his cell, murder him by staging a fake "suicide," then hope and expect that the narcotic substance would be found in Plaintiff's system during a subsequent autopsy, in an attempt to claim Plaintiff was "on drugs" and hung himself.

(*Id.*) Samaniego alleges he "suffered numerous injuries, including but not limited to, a concussion, lacerations to various body parts and permanent eye socket damage." (*Id.*, ¶ 28.) Samaniego seeks to hold the identified correctional officers liable for violations of his civil rights arising under the First and Eighth Amendments. (*See generally* Doc. 12 at 8-15.)

On July 19, 2019, Samaniego was transferred to Kern Valley State Prison. (Doc. 12 at 7, ¶ 29.)

---

[2] The parties' names are emphasized in capital letters throughout the First Amended Complaint. In summarizing the allegations, the Court omits this emphasis.

Plaintiff contends he has continued to suffer "retaliatory tactics and behavior by CDCR personnel" following the transfer. (*Id.* at 12, ¶ 42.) Samaniego asserts he is suffering retaliatory acts "in the form of threats, verbal abuse, and with regard to [his] medical needs, food preparation; housing assignments; receipt of mail and common inmate rights." (*Id.*)

Samaniego seeks to state claims against the wardens of CCI Tehachapi and KVSP, Sullivan and Pfeiffer.[3] (Doc. 12 at 1; *see also id.* at 9-10, ¶¶ 33-34.) He asserts, "Sullivan, as the official policy maker for CCI Tehachapi, was aware of widespread beatings and use of excessive force in CCI Tehachapi." (*Id.* at 9, ¶ 33.) Similarly, he asserts "Pfeiffer, as the official policy maker for KVSP, was aware of widespread beatings and use of excessive force at KVSP." (*Id.* at 10, ¶ 34.) Samaniego contends "instead of taking proper steps to discipline Individual Defendants," both Sullivan and Pfeiffer "condoned, encouraged, fostered and/or ratified the unlawful conduct of said Defendants." (*Id.* at 9-10, ¶¶ 33- 34.) Thus, Samaniego seeks to state claims for violations of the First and Eighth Amendments against Sullivan and Pfeiffer "in both [their] individual/personal and official capacities for [their] own culpable action or inaction in the training, supervision or control of [the] subordinates, or for … acquiescence in the constitutional deprivations which this amended Complaint alleges, or for the conduct that showed a reckless or callous indifference to the rights of others." (*Id.*)

## II.     Legal Standards for a Motion to Dismiss

A Rule 12(b)(6) motion "tests the legal sufficiency of a claim." *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). In ruling on a motion to dismiss filed pursuant to Rule 12(b), the Court "may generally consider only allegations contained in the pleadings, exhibits attached to the complaint, and matters properly subject to judicial notice." *Outdoor Media Group, Inc. v. City of Beaumont*, 506 F.3d 895, 899 (9th Cir. 2007) (citation and quotation marks omitted).

Dismissal of a claim under Rule 12(b)(6) is appropriate when "the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory." *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008). Thus, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its

---

[3] Plaintiff refers to Sullivan and Pfeiffer as "official policy maker[s]" in the pleading, but also indicates the defendants are wardens of the facilities in the caption of the First Amended Complaint. (Doc. 12 at 1, 9-10.)

face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The Supreme Court explained,

> A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'"

*Iqbal*, 556 U.S. at 678 (internal citations omitted).

When considering a motion to dismiss, the Court must accept as true the factual allegations made in the complaint. *Hospital Bldg. Co. v. Rex Hospital Trustees*, 425 U.S. 738, 740 (1976). A court must construe the pleading in the light most favorable to the plaintiff and resolve all doubts in favor of the plaintiff. *Jenkins v. McKeithen*, 395 U.S. 411, 421 (1969). However, legal conclusions need not be taken as true when "cast in the form of factual allegations." *Ileto v. Glock, Inc.*, 349 F.3d 1191, 1200 (9th Cir. 2003).

"The issue is not whether a plaintiff will ultimately prevail, but whether the claimant is entitled to offer evidence to support the claims. Indeed it may appear on the face of the pleadings that a recovery is very remote and unlikely but that is not the test." *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974). However, the Court "will dismiss any claim that, even when construed in the light most favorable to plaintiff, fails to plead sufficiently all required elements of a cause of action." *Student Loan Marketing Assoc. v. Hanes*, 181 F.R.D. 629, 634 (S.D. Cal. 1998). To the extent that the pleadings can be cured by the plaintiff alleging additional facts, leave to amend should be granted. *Cook, Perkiss and Liehe, Inc. v. Northern Cal. Collection Serv., Inc.*, 911 F.2d 242, 247 (9th Cir. 1990) (citations omitted).

### III. Section 1983 Claims

An individual may bring an action for the deprivation of civil rights pursuant to 42 U.S.C. § 1983 ("Section 1983"), which "is a method for vindicating federal rights elsewhere conferred." *Albright v. Oliver*, 510 U.S. 266, 271 (1994). In relevant part, Section 1983 provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory... subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be

>liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress...

42 U.S.C. § 1983.  To state a cognizable claim for a Section 1983 violation, a plaintiff must allege (1) the deprivation of a constitutional right and (2) a person who committed the alleged violation acted under color of state law.  *West v. Atkins*, 487 U.S. 42, 48 (1988); *Williams v. Gorton*, 529 F.2d 668, 670 (9th Cir. 1976).

A plaintiff must allege he suffered a specific injury and show causal relationship between the defendant's conduct and that injury.  *See Rizzo v. Goode*, 423 U.S. 362, 371-72 (1976).  Thus, Section 1983 "requires that there be an actual connection or link between the actions of the defendants and the deprivation alleged to have been suffered by the plaintiff."  *Chavira v. Ruth*, 2012 WL 1328636, at *2 (E.D. Cal. Apr. 17, 2012).  A person deprives another of a constitutional right "if he does an affirmative act, participates in another's affirmative acts, or omits to perform an act which he is legally required to do so that it causes the deprivation of which complaint is made."  *Johnson v. Duffy*, 588 F.2d 740, 743 (9th Cir. 1978).

## IV.     Discussion and Analysis

Defendants Sullivan and Pfeiffer seek dismissal of the claims against them, asserting "they are not alleged to have had direct involvement in, or knowledge of the subject events, and Defendants cannot be liable under § 1983 merely on the basis of supervisory liability."  (Doc. 14 at 3, 4.)  In addition, Defendants assert they "are immune from liability for the claims against them in their official capacities."  (*Id.* at 3.)

### A.     Supervisor Liability

Under Section 1983, Plaintiff must allege that each defendant personally participated in the deprivation of his rights.  *Jones v. Williams*, 297 F.3d 930, 934 (9th Cir. 2002).  The facts alleged must be sufficient for the Court to conclude that each defendant, through his or her own individual actions, violated Plaintiff's constitutional rights.  *Iqbal*, 556 U.S. at 1948-49.  Liability may not be imposed on supervisory personnel under Section 1983 on the theory of *respondeat superior*, as each defendant is only liable for his or her own misconduct.  *Id.*; *Ewing v. City of Stockton*, 588 F.3d 1218, 1235 (9th Cir. 2009).

Plaintiff is unable to hold Sullivan and Pfeiffer liable for the actions of correctional officers at the prisons based upon the doctrine of *respondeat superior*. Plaintiff must allege facts sufficient to determine that Sullivan and Pfeiffer "participated in or directed the violations, or knew of the violations and failed to act to prevent them." *See Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989); *accord Starr v. Baca,* 633 F.3d 1191, 1209 (9th Cir. 2011); *see also Anderson v. Hansen*, 2013 WL 4676212 at *3 (E.D. Cal. Aug. 30, 2013) ("[a] prison official may be held liable for failing to protect an inmate from a prison guard if he knew of an excessive risk to inmate health or safety posed by the … prison guard and disregarded that risk"). Claims that "rely upon claims of the general responsibility of the warden for prison operations that are insufficient to establish Section 1983 liability." *Brown v. Perez*, 2016 WL 7975264 at *6 (C.D. Cal. Dec. 16, 2016).

Opposing dismissal of his claims, Samaniego asserts the allegations against Sullivan and Pfeiffer are sufficient to support his claims. (Doc. 16 at 5-6.) According to Samaniego, he "alleged both wardens' knowledge of Plaintiff being 'a target' of their respective correctional officer subordinates at both facilities including the retaliatory, unconstitutional, culpable actions of those subordinates, coupled with their inaction, amounts to acquiescence in the unconstitutional conduct of said subordinates." (*Id.* at 5.) He also asserts that he "properly alleged that Warden Sullivan knew Plaintiff had a bullseye on his back after he came forward to report the prior inmate beating on December 31, 2018." (*Id.* at 6.) In support of this assertion, Samaniego refers to Paragraphs 33 and 34, in which he alleged Sullivan and Pfeiffer "ratified the Individual Defendants and Doe Defendants' unconstitutional conduct…"[4] (*Id.*)

Contrary to the assertion made in opposition to the motion, Samaniego did not allege specific knowledge by Sullivan or Pfeiffer regarding Plaintiff being a witness or the target of retaliatory actions. There are no allegations supporting a conclusion that the Wardens of CCI Tehachapi and KVSP were directly involved in the alleged attack or knew of a risk of harm *to Plaintiff* and failed to prevent it. He failed to allege any facts supporting his conclusory statements that the wardens "condoned, encouraged, fostered and/or ratified the … conduct" of the identified correctional officers. Moreover, it strains

---

[4] The Court observes that these are conclusions, not factual allegations. They fail to provide any detail as to why Plaintiff thinks they true—aside from supposition.

6

credulity to infer that Pfeiffer, as the Warden of KSVP, could be aware of the actions of the correctional officer defendants employed at CCI Tehachapi or would have authority, as Samaniego suggests, to discipline the correctional officer defendants employed at a different facility.[5] The threadbare and conclusory allegations, the facts alleged are insufficient to support Samaniego's claims for violations of the First and Eighth Amendments against Sullivan or Pfeiffer.

### B.   "Official Capacity" Claims and Section 1983

In the First Amended Complaint, Samaniego indicates that Sullivan and Pfeiffer are sued "in both [their] individual/personal and official capacities…" (Doc. 12 at 9-10, ¶¶ 33, 34.)  Furthermore, Samaniego seeks only monetary damages, rather than injunctive or declaratory relief.  (*Id.* at 15.)  Defendants contend that because they are sued in their official capacity, "the claims against them as acting in their official capacities should be dismissed." (Doc. 14 at 5.)  Samaniego does not address the viability of his claims to the extent they are raised against Sullivan and Pfeiffer in their official capacities. (*See generally* Doc. 16 at 4-7.)

Generally, a state or state official sued in his or her official capacity are not "persons" under 42 U.S.C. § 1983.  *Flint v. Dennison*, 488 F.3d 816, 825 (9th Cir. 2007).  The Eleventh Amendment is a jurisdictional bar to suits brought by private parties against a state or state agency unless the state consents to the suit.  *See Dittman v. California*, 191 F.3d 1020, 1025-26 (9th Cir. 1999) ("In the absence of a waiver by the state . . . under the [E]leventh [A]mendment, agencies of the state are immune from private damage actions.") (internal quotations omitted).  Similarly, suing a state official in his or her official capacity is analogous to suing the state itself.  *Flint v. Dennison*, 488 F.3d 816, 825 (9th Cir. 2007). "Therefore, state officials sued in their official capacities… [are] generally entitled to Eleventh Amendment immunity." *Id.* at 825.

Because claims against Sullivan and Pfeiffer in their official capacities are tantamount to suing the state of California, Plaintiff's claims for monetary damages are barred by the Eleventh Amendment. *See Flint*, 488 F.3d at 825; *Aholelei v. Dep't of Public Safety*, 488 F.3d 1144, 1147 (9th Cir. 2007)

---

[5] Plaintiff asserts the "Individual Defendants and Doe Defendants brutally beat Plaintiff without justification on May 24, 2019."  (Doc. 12 at 8.)  Thus, it appears all "Doe Defendants" were employed at CCI Tehachapi and were not under the supervision of Warden Pfeiffer.

("The Eleventh Amendment bars suits for money damages in federal court against … state officials acting in their official capacities"); *Huckabee v. Medical Staff at CSATF*, 2013 WL 4496552 at *6 (E.D. Cal. Aug. 20, 2013) (finding the plaintiff could not pursue claims for damages against a prison warden in his official capacity, as the claims were barred under the Eleventh Amendment). The motion to dismiss the claims brought against Sullivan and Pfeiffer in their official capacities is granted.

## V. Leave to Amend

Pursuant to Rule 15 of the Federal Rules of Civil Procedure, leave to amend "shall be freely given when justice so requires," bearing in mind "the underlying purpose of Rule 15 to facilitate decisions on the merits, rather than on the pleadings or technicalities." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (en banc) (alterations, internal quotation marks omitted). When dismissing a complaint for failure to state a claim, "a district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Id.* at 1130 (internal quotation marks omitted). Accordingly, leave to amend generally shall be denied only if allowing amendment would unduly prejudice the opposing party, cause undue delay, or be futile, or if the moving party has acted in bad faith. *Leadsinger, Inc. v. BMG Music Publishing*, 512 F.3d 522, 532 (9th Cir. 2008).

Plaintiff requests that if dismissal is granted, then leave to amend be granted. (Doc. 16 at 7.) Due to the sparsity of allegations in the complaint related to the knowledge that may be attributed to Sullivan and Pfeiffer, the Court has insufficient information to conclude that amendment is futile. Plaintiff may be able to allege additional facts that support his claims against Sullivan and Pfeiffer in their individual capacities. Further, it does not appear that allowing amendment would cause undue delay at this juncture, and there is no evidence he acted in bad faith. Thus, the request for leave to amend is granted.

## VI. Conclusion and Order

Based upon the foregoing, the Court **ORDERS** Defendants' motion to dismiss (Doc. 14) is **GRANTED** as follows:

1. The claims against Sullivan and Pfeiffer in their individual capacities are **DISMISSED** with leave to amend.

2. The claims against Sullivan and Pfeiffer in their official capacities are **DISMISSED** without leave to amend.

3. Plaintiff **SHALL** file any Second Amended Complaint within thirty days of the date of service of this order. If Plaintiff does not file an amended pleading, the First Amended Complaint shall be deemed the operative pleading, with all claims against Sullivan and Pfeiffer dismissed.

IT IS SO ORDERED.

Dated:   **January 13, 2022**

UNITED STATES DISTRICT JUDGE