1
2
3
4
5
6
7
8

**UNITED STATES DISTRICT COURT**

9

**EASTERN DISTRICT OF CALIFORNIA**

10

| | |
|---|---|
| 11  IVAN SAMANIEGO,                                    ) | Case No.: 1:21-cv-0839 JLT BAK (EPG) |
| 12                    Plaintiff,          ) | ORDER GRANTING DEFENDANTS' MOTION TO DISMISS |
| 13         v.                                           ) | |
| 14  CALIFORNIA DEPARTMENT OF              ) | (Doc. 26) |
|     CORRECTIONS AND REHABILITATION,   ) | |
| 15  et al.,                                          ) | |
| 16                    Defendants.      ) | |
| 17 _____) | |

18        Ivan Samaniego asserts his civil rights were violated while he was incarcerated at the California

19   Correctional Institution- Tehachapi.  Samaniego contends he witnessed the assault of an inmate by CCI

20   correctional officers and suffered retaliation for coming forward as a witness.  He asserts the retaliatory

21   acts continued after he was transferred to Kern Valley State Prison.  Samaniego seeks to hold

22   correctional officers liable for violating his rights under the First Amendment and Eighth Amendment.

23   In addition, Samaniego seeks to hold W.J. Sullivan and Christian Pfeiffer, policy-makers for CCI-

24   Tehachapi and KVSP, liable for the First Amendment violations.[1]  (*See generally* Doc. 23.)

25        Defendants seek dismissal of Second Amended Complaint pursuant to Rule 12(b)(6) of the

26   Federal Rules of Civil Procedure, asserting Samaniego fails to allege facts sufficient to support his

27

28   _____

[1] Defendant Pfeiffer is erroneously identified in the caption as "Pfeffer."  (*See* Doc. 14 at 3, n.2)

1   claims.  (Doc. 26.)  Samaniego opposes the motion, alleging the facts alleged are sufficient.  (Doc. 28.)

2   The Court found the matter suitable for decision without oral argument, and the motion was taken

3   under submission pursuant to Local Rule 230(g).  (*See* Doc. 30.)  For the reasons set forth below,

4   Defendants' motion to dismiss is **GRANTED**.

5   **I.      Background and Plaintiff's Allegations**[2]

6         Samaniego alleges that he "witnessed the unprovoked beating by several CCI Correctional

7   Officers of fellow CCI inmate, Joe Nino, outside of Samaniego's cell" on December 31, 2018.  (Doc.

8   23 at 7, ¶ 27.)  According to Samaniego, "once [he] came forward as a witness to this particular assault

9   against Nino, certain CCI Correctional Officers aggressively initiated a pattern of harassment, abuse

10   and retaliation against Samaniego."  (*Id.*)

11         Samaniego asserts he "was attacked and brutally beaten by several CCI Correctional Officers"

12   on May 24, 2019.  (Doc. 23 at 7, ¶ 28.)  He alleges Officers Castillo, Weiss, Gray, Lugue, Perez,

13   Castellanos, and Zavaleta—along with unidentified "Doe" defendants— participated in a "cell

14   extraction" that was staged and "a complete fabrication."  (*Id.* at 8, ¶ 31.)  Rather, Samaniego contends

15   correctional officers "body slammed, punched and kicked Plaintiff without justification."  (*Id.*)

16   Plaintiff alleges:

17
18
19
20
21
22
> [E]ach Defendant who participated in the "cell extraction" knew it was staged,
> conspired in it, observed it, and aided or abetted it, doing so with unconscionable
> animus and malice, undertaken with the intent to cause Plaintiff's death. The
> Correctional Officers continued to beat Plaintiff after he was on the floor and unable to
> defend himself. These same named Defendants prepared a narcotic liquid substance on
> a CDCR - issued baton and raped and tortured Plaintiff by forcefully inserting this
> instrument inside Plaintiff's rectum. The intent of the Individual Defendant
> perpetrators was to insert this foreign narcotic substance into Plaintiff's system, take
> Plaintiff back to his cell, murder him by staging a fake "suicide," then hope and expect
> that the narcotic substance would be found in Plaintiff's system during a subsequent
> autopsy, in an attempt to claim Plaintiff was "on drugs" and hung himself.

23   (*Id.*)  Samaniego alleges he "suffered numerous injuries, including but not limited to, a concussion,

24   lacerations to various body parts and permanent eye socket damage."  (*Id.*, ¶ 28.)  He contends the

25   correctional officers are "liable for [his] injuries, either because they were integral participants in the

26   misconduct, or because they failed to intervene when they had the opportunity and duty to do so and

27

28   
---
[2] The parties' names are emphasized in capital letters throughout the Second Amended Complaint.  The Court omits this emphasis in summarizing and quoting the allegations.

prevent these violations." (Doc. 23 at 13, ¶ 38.) Thus, Samaniego seeks to hold the correctional officers liable for violations of his civil rights arising under the First and Eighth Amendments. (*See generally id.* at 8-17.)

Samaniego seeks to hold the warden of CCI Tehachapi, defendant Sullivan, liable for the constitutional violations. (Doc. 23 at 9-10, ¶¶ 33-34.) Samaniego asserts "Sullivan had direct, personal knowledge of rampant incidents, including numerous administrative 602 claims and lawsuits brought by inmates housed at CCI Tehachapi against CCI staff, primarily first line Correctional Officers." (*Id.* at 9, ¶ 33.) Samaniego contends that "Sullivan was aware of the December 31, 2018 incident that Samaniego witnessed and provided a statement regarding the beating of CCI inmate Joe Nino, who filed a timely 602 claim." (*Id.* at 9-10, ¶ 34.) Samaniego alleges: "Sullivan knew of this beating and of Samaniego's involvement as witness because part of Sullivan's job duties as CCI Warden is to review such claim forms for possible disciplinary actions that may be brought against CCI personnel." (*Id.* at 10, ¶ 34.) He also asserts: "Sullivan knew that Samaniego's involvement as a witness to the systemic excessive force and retaliation undertaken by CCI's rogue Correctional Officers would undoubtedly 'put a target' on Samaniego's back." (*Id.*) Samaniego alleges the warden "ignored … the clear danger to his personal, physical well-being, by condoning, encouraging, fostering and/or ratifying the unlawful conduct" of the defendant correctional officers. (*Id.*)

On July 19, 2019, Samaniego was transferred to Kern Valley State Prison. (Doc. 23 at 7, ¶ 29.) However, Samaniego contends he continues to suffer "retaliatory tactics and behavior by CDCR personnel … after his transfer to the KVSP facility." (*Id.* at 14, ¶ 45.) Samaniego alleges the warden of KVSP, defendant Pfeiffer, "had or should have had in his capacity as KVSP warden, direct, firsthand knowledge of Samaniego's personal file and identification of Samaniego as a 'target' upon [his] transfer from CCI to KVSP in July 2019." (*Id.* at 11, ¶ 35.) According to Samaniego:

> Pfeiffer's awareness of Samaniego's personal file upon transfer to KVSP, including the severe beating that Samaniego sustained at CCI on May 24, 2019, provided sufficient notice to Pfeiffer of who, what and why Samaniego had become – and remained: a target of the corrupt, criminal CDCR Correctional Officers who run the daily CDCR activities, including at KVSP. Also, on information and belief, Pfeiffer knew of the ongoing, widespread, constant beatings and use of excessive force by these corrupt Correctional Officers, who ruled the cell blocks and yards with intimidation, threats, and with brutal and violent attacks against defenseless inmates.

1   (*Id.* at 12, ¶ 36.)  Samaniego asserts he is suffering "retaliatory tactics" at KSVP "in the form of threats,

2   verbal abuse, and with regard to [his] medical needs, food preparation; housing assignments; receipt of

3   mail and common inmate rights."  (*Id.* at 15, ¶ 45.)  He reports he "has filed at least eight (8) 602

4   complaints involving charges against KVSP Correctional Officers for: physical intimidation, denial of

5   medical care, theft of personal property and intentional placement … in non[-]segregated housing,

6   purposely putting his life in danger…."  (*Id.* at 12, ¶ 36.)  Samaniego asserts that "instead of taking

7   proper steps to discipline Individual Defendants," Pfeiffer condoned, encouraged, fostered and/or

8   ratified the unlawful conduct.  (*Id.*, ¶ 37.)

9          Samaniego seeks to hold both wardens Sullivan and Pfeiffer liable "for [their] own culpable

10   action or inaction in the training, supervision or control of his subordinates…, or for his acquiescence

11   in the constitutional deprivations which [the] Second Amended Complaint allege, or for the conduct

12   that showed a reckless or callous indifference to the rights of others."  (Doc. 23 at 10-11, ¶ 34; *see also*

13   *id.* at 11-12, ¶ 37.)

14          On May 24, 2021, Samaniego initiated this action by filing a complaint for violations of his

15   civil rights (Doc. 1), which he amended on November 29, 2021 (Doc. 12).  Defendants Sullivan and

16   Pfeiffer moved to dismiss the claims against them, and the motion was granted on January 14, 2022.

17   (Docs. 14, 22.)  To the extent the claims were raised against the wardens in their official capacity, the

18   Court dismissed the claims without leave to amend.  (*Id.* at 9.)  However, the Court granted leave to

19   amend to the extent the claims were raised against the wardens in their individual capacities.  (*Id.* at 8.)

20          Samaniego filed his Second Amended Complaint on February 14, 2022. (Doc. 23.)  Defendants

21   moved to dismiss all claims in the SAC on March 21, 2022.  (Doc. 26.)  Samaniego filed his opposition

22   to the motion on April 4, 2022 (Doc. 28), to which Samaniego replied on April 19, 2022 (Doc. 29).

23   **II.     Legal Standards for a Motion to Dismiss**

24          A Rule 12(b)(6) motion "tests the legal sufficiency of a claim." *Navarro v. Block*, 250 F.3d

25   729, 732 (9th Cir. 2001). Dismissal of a claim under Rule 12(b)(6) is appropriate when "the complaint

26   lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory." *Mendiondo v.*

27   *Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008).  Thus, under Rule 12(b)(6), "review

28   is limited to the complaint alone." *Cervantes v. City of San Diego*, 5 F.3d 1273, 1274 (9th Cir. 1993).

The Supreme Court held: "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The Court explained,

> A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'"

*Iqbal*, 556 U.S. at 678 (internal citations omitted).

Allegations of a complaint must be accepted as true when the Court considers a motion to dismiss. *Hospital Bldg. Co. v. Rex Hospital Trustees*, 425 U.S. 738, 740 (1976). A court must construe the pleading in the light most favorable to the plaintiff, and resolve all doubts in favor of the plaintiff. *Jenkins v. McKeithen*, 395 U.S. 411, 421 (1969). However, legal conclusions need not be taken as true when "cast in the form of factual allegations." *Ileto v. Glock, Inc.*, 349 F.3d 1191, 1200 (9th Cir. 2003).

"The issue is not whether a plaintiff will ultimately prevail, but whether the claimant is entitled to offer evidence to support the claims. Indeed it may appear on the face of the pleadings that a recovery is very remote and unlikely but that is not the test." *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974). The Court "will dismiss any claim that, even when construed in the light most favorable to plaintiff, fails to plead sufficiently all required elements of a cause of action." *Student Loan Marketing Assoc. v. Hanes*, 181 F.R.D. 629, 634 (S.D. Cal. 1998). To the extent that the pleadings can be cured by the plaintiff alleging additional facts, leave to amend should be granted. *Cook, Perkiss and Liehe, Inc. v. Northern Cal. Collection Serv., Inc.*, 911 F.2d 242, 247 (9th Cir. 1990) (citations omitted).

## III.     Section 1983 Claims

An individual may bring an action for the deprivation of civil rights pursuant to 42 U.S.C. § 1983 ("Section 1983"), which "is a method for vindicating federal rights elsewhere conferred." *Albright v. Oliver*, 510 U.S. 266, 271 (1994). In relevant part, Section 1983 provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory... subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be

liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress...

42 U.S.C. § 1983.  To state a cognizable claim for a Section 1983 violation, a plaintiff must allege (1) the deprivation of a constitutional right and (2) a person who committed the alleged violation acted under color of state law.  *West v. Atkins*, 487 U.S. 42, 48 (1988); *Williams v. Gorton*, 529 F.2d 668, 670 (9th Cir. 1976).

A plaintiff must allege a specific injury was suffered and show causal relationship between the defendant's conduct and the injury suffered.  *See Rizzo v. Goode*, 423 U.S. 362, 371-72 (1976).  Thus, Section 1983 "requires that there be an actual connection or link between the actions of the defendants and the deprivation alleged to have been suffered by the plaintiff."  *Chavira v. Ruth*, 2012 WL 1328636, at *2 (E.D. Cal. Apr. 17, 2012).  A person deprives another of a constitutional right "if he does an affirmative act, participates in another's affirmative acts, or omits to perform an act which he is legally required to do so that it causes the deprivation of which complaint is made."  *Johnson v. Duffy*, 588 F.2d 740, 743 (9th Cir. 1978).

## IV.    Discussion and Analysis

Defendants seek dismissal of all claims in the SAC, asserting: (1) Samaniego "fails to allege facts sufficient to state a cognizable claim for excessive force or retaliation against any of the Defendants;" (2) the facts alleged are insufficient to establish "supervisory liability for the § 1983 claims;" (3) "Sullivan and Pfeiffer are entitled to qualified immunity;" and (4) "the claims against 'Doe' defendants are improper in federal court."  (Doc. 26 at 1-2.)

### A.    First Cause of Action: Excessive Force and the Eighth Amendment

The Eighth Amendment prohibits the infliction of cruel and unusual punishment. *U.S. Const. amend VIII.*  When prison officials use excessive force against prisoners, they violate the inmates' Eighth Amendment rights. *Clement v. Gomez*, 298 F.3d 898, 903 (9th Cir. 2002).  In order to state a claim for the use of excessive force in violation of the Eighth Amendment, a plaintiff must allege that prison officials applied force maliciously and sadistically to cause harm, rather than in a good-faith effort to maintain or restore discipline. *Hudson v. McMillian*, 503 U.S. 1, 6-7 (1992); *see also Hoard v. Hartman*, 904 F.3d 780, 788 (9th Cir. 2018).  A court may consider: (1) the need for application of

force, (2) the relationship between that need and the amount of force used, (3) the threat reasonably perceived by the responsible officials, and (4) any efforts made to temper the severity of a forceful response. *Id.* at 7; *see also id.* at 9-10 ("[t]he Eighth Amendment's prohibition of cruel and unusual punishment necessarily excludes from constitutional recognition de minimis uses of physical force, provided that the use of force is not of a sort repugnant to the conscience of mankind") (internal quotation marks, citations omitted).

### 1.   Individual participation

A plaintiff cannot "hold an officer liable because of his membership in a group without a showing of individual participation in the unlawful conduct." *Jones v. Williams*, 297 F.3d 930, 935 (9th Cir. 2002), citing *Chuman v. Wright*, 76 F.3d 292, 294 (9th Cir. 1996).  Likewise, an officer cannot be held liable for being "merely present" at the scene of an alleged constitutional violation. *Jones*, 297 F.3d at 939.  Rather, an officer's liability under Section 1983 is predicated on his "personal involvement" or "integral participation" in the alleged violation. *Chuman*, 76 F.3d at 294-95. "Integral participation does not require that each officer's actions themselves rise to the level of a constitutional violation." *Boyd v. Benton Cnty.*, 374 F.3d 773, 780 (9th Cir. 2004).  However, there must have been some "fundamental involvement in the conduct that allegedly caused the violation." *Blankenhorn v. City of Orange*, 485 F.3d 463, 481 n.12 (9th Cir. 2007).

The Ninth Circuit disapproved a "team effort" standard for liability because it would "allow[] the jury to lump all the defendants together, rather than require it to base each individual's liability on his own conduct." *Chuman*, 76 F.3d at 295.  Although the Ninth Circuit has not foreclosed the possibility of group liability in certain "very limited circumstances," the Court indicated such liability would only be proper where the actions of police officers deprive the plaintiff of any chance to learn exactly which officer took what actions because the officers were the only ones who knew what occurred. *Jones*, 297 F.3d at 938.

### 2.   Failure to protect

A prison official may be liable under Section 1983 if he or she is aware that a fellow officer is violating a prisoner's constitutional rights but fails to intervene. *Cunningham v. Gates*, 229 F.3d 1271, 1289 (9th Cir. 2000) ("police officers have a duty to intercede when their fellow officers violate the

7

1 | constitutional rights of a suspect or other citizen"); *see also Gaudreault v. Municipality of Salem*, 923

2 | F.2d, 203, 207 n.3 (1st Cir. 1990) ("An officer who is present at the scene who fails to take reasonable

3 | steps to protect the victim of another officer's use of excessive force can be held liable under section

4 | 1983 for his nonfeasance."). The failure to intervene can support an excessive force claim where the

5 | bystander-officers had a realistic opportunity to intervene but failed to do so.  *Lolli v. County of*

6 | *Orange*, 351 F.3d 410, 418 (9th Cir. 2003); *Cunningham*, 229 F.3d at 1289; *Robins v. Meecham*, 60

7 | F.3d 1436, 1442 (9th Cir. 1995).

8 |      In a "failure-to-protect" Eighth Amendment violation claim, an inmate must show that a prison

9 | official's act or omission (1) was objectively, sufficiently serious, and (2) the official was deliberately

10 | indifferent to inmate's health or safety.  *Farmer v. Brennan*, 511 U.S. 825, 834 (1994); *Hearns v.*

11 | *Terhune*, 413 F.3d 1036, 1042 (9th Cir. 2005).  A prison official need not "believe to a moral

12 | certainty" that an inmate is at risk of harm "before [he] is obligated to take steps to prevent such an

13 | assault," but "he must have more than a mere suspicion that an attack will occur."  *Berg v. Kincheloe*,

14 | 794 F.2d 457, 459 (9th Cir. 1986) (citation omitted).

15 | ### 3.    Liability of Officer Mumby

16 |      As an initial mater, Defendants observe Mumby was "not named as an 'Individual Defendant'

17 | against whom Plaintiff asserts excessive force claims."  (Doc. 26 at 11, citing Doc. 23 at 2-4, 8.)

18 | Thus, Defendants contend the allegations in the SAC are insufficient to state a claim against Mumby.

19 |      Samaniego identified Mumby as a defendant in Paragraph 5 of the SAC.  (Doc. 23 at 2, ¶ 5.)

20 | Samaniego then indicated that "Defendants named in Paragraphs *6 through 13*"—which included

21 | Officers Castillo, Weiss, Gray, Lugue, Perez, Castellanos, Zavaleta, and a "Doe" defendant—

22 | "sometimes hereinafter [were] identified as 'Individual Defendants.'"[3]  (*Id.* at 4, ¶ 12 [emphasis added];

23 | *see also id.* at 3-4, ¶¶ 6-13.)  Samaniego used the term "Individual Defendants" to identify the

24 | defendants against whom the excessive force claim was stated.  (*Id.* at 8.)  Because Mumby was not

25 | included in the list of "Individual Defendants," Samaniego did not include Mumby as a defendant for

26 |

27 | [3] Samaniego acknowledges that "Mumby was technical (sic) not included as a 'named individual defendant'" in Paragraph

28 | 12 of the SAC.  (Doc. 28 at 6-7.)  Samaniego asserts "the language of ¶12 should read 'Defendants named in Paragraphs 5 through 12 sometimes hereinafter identified as 'Individual Defendants'….'"  (*Id.* at 7, emphasis omitted.)  The Court declines to cure the admitted pleading defect at this juncture.

1   the claim of excessive force, and the facts alleged in support of the claim did not encompass any action

2   by Mumby.  (*See id.* at 8-9, ¶¶ 31-32; *id.* at 13, ¶¶ 38-40.)  For this reason, the facts alleged are

3   insufficient to state a claim for excessive force against Mumby.

4                                    4.        Liability of "Individual Defendants"

5          Defendants contend the allegations against the "Individual Defendants" for excessive force are

6   "insufficient because Plaintiff does not state which Defendant did what, leaving Defendants without

7   fair notice of the claim."  (Doc. 26 at 11.)  Defendants assert: "To state a viable § 1983 individual

8   capacity claim Plaintiff must, at a minimum, allege facts which demonstrate the specific acts of each

9   individual Defendant."  (*Id.*, citing *El-Shaddai v. Zamora*, 2017 WL 3358486, at *8 (C.D. Cal. Aug. 3,

10  2017).)  Therefore, Defendants argue the claims against the "Individual Defendants" should be

11  dismissed with leave to amend, and Samaniego "should be required to allege specifically what each

12  Defendant's actions were in using excessive force..."  (*Id.* at 12.)

13         Samaniego asserts his "allegations of the individual correctional officer defendants' excessive

14  use of force are adequately plead" and "satisfactorily place the individual correctional officer

15  defendants on notice of the claims against them."  (Doc. 28 at 5, emphasis omitted.)  Samaniego notes

16  he identifies the names of the individual correctional officers in the SAC, and alleges "unreasonable

17  and excessive use of force was utilized by the individually named correctional officers and that they

18  all wantonly inflicted an objectively unreasonable and excessive amount of pain against [him]."  (*Id.*)

19  In support the assertion that the allegations are sufficient, Samaniego cites *Brownlee v. Conine*, 57

20  F2d. 354 (7th Cir. 1992) and *Bodine Produce, Inc. v. United Farm Workers Org. Comm.*, 494 F.2d

21  541 (9th Cir. 1974).  (*See* Doc. 28 at 5-6.)  Samaniego notes that in *Brownlee*, the Seventh Circuit

22  "found so-called 'conclusory' statements of claims sufficient if the Complaint outlines the grounds and

23  the law claimed to be violated–and connects the defendants with the alleged violation(s)."  (*Id.* at 5,

24  citing *Brownlee*, 957 F.2d 354.)  In addition, Samaniego asserts the Ninth Circuit determined

25  "sufficiency of a complaint's allegations may be developed through discovery and other pre-trial

26  procedures."  (*Id.* at 6, citing *Bodine Produce*, 494 F.2d at 561-562.)

27         Importantly, the cases cited by Samaniego do not address the sufficiency of pleading a claim

28  against a single officer among a group of officers.  Further, the cases cited by Samaniego were decided

1    before the Supreme Court examined the pleading standards of Rule 8.  The Court clearly indicated a

2    plaintiff must allege claim "plausible on its face," which requires "factual content that allows the court

3    to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556

4    U.S. at 678; *Twombly*, 550 U.S. at 570.  Notably, even before the Supreme Court addressed the

5    pleading requirements in *Iqbal* and *Twombly*, the Ninth Circuit indicated a plaintiff must be able to

6    allege the wrongful acts of a defendant and cannot reply upon a group theory of liability.  *See Jones*,

7    297 F.3d at 939; *Chuman*, 76 F.3d at 294-95.  Samaniego fails to meet the pleading standards of Rule 8,

8    as explained in *Iqbal* and *Twombly* and the Ninth Circuit in *Jones* and *Chuman.*

9            In the complaint, Samaniego asserts "Individual Defendants and Doe Defendants brutally beat

10   Plaintiff without justification on May 24, 2019."  (Doc. 23 at 8, ¶ 31.)  He asserts that "each Defendant

11   *who participated* in the 'cell extraction' knew it was staged, conspired in it, observed it, and aided or

12   abetted it…" (*Id.*, emphasis added)  Samaniego also alleges "Individual Defendants and Doe

13   Defendants are liable for Plaintiff's injuries, either because they were integral participants in the

14   misconduct, *or* because they failed to intervene when they had the opportunity and duty to do so and

15   prevent these violations."  (*Id.* at 13, ¶ 38, emphasis added.)  He also asserts that "none of the named

16   the "Individual Defendants, [Doe] Defendants or CDCR Correctional Officers on duty took reasonable

17   steps to protect [him]." (*Id.* at 16, ¶ 50.)  Based upon these allegations, it appears Samaniego does not

18   believe all defendant officers *participated* in the use of excessive force.  However, Samaniego does

19   not clarify which defendants used force—let alone identify which correctional officers were physically

20   present during the cell extraction—or which he believed were "on duty" and failed to intervene or take

21   "reasonable steps to protect" him from harm.

22           Without additional allegations, the Court is unable to determine whether each of the

23   "Individual Defendants" was an "integral participant" in the alleged use of excessive force.  *See Boyd*,

24   374 F.3d at 780 (holding that every officer who provided backup for an officer who unconstitutionally

25   deployed a flash-bang device to enter a suspect's home could be held liable, because "every officer

26   participated in some meaningful way" and "was aware of the decision to use the flash-bang, did not

27   object to it, and participated in the search operation knowing the flashbang was to be deployed").

28   Because the allegations are insufficient to determine whether each of "Individual Defendants"

1    participated in a meaningful way, or which of the correctional officers may be liable for the failure to

2    protect Samaniego, the motion to dismiss the excessive force claim is granted.

3         **B.    Second Cause of Action: Retaliation and the First Amendment**

4         Under the First Amendment, prison officials may not retaliate against prisoners for engaging in

5    protected conduct, such as initiating litigation or filing administrative grievances.  *Rhodes v. Robinson*,

6    408 F.3d 559, 568 (9th Cir. 2005).  A cognizable claim of First Amendment retaliation entails five

7    basic elements: (1) an assertion that a state actor took some adverse action against an inmate (2)

8    because of (3) the inmate's protected conduct, and that the adverse action (4) chilled the inmate's

9    exercise of his First Amendment rights and (5) did not reasonably advance a legitimate penological

10   purpose.  *Brodheim v. Cry*, 584 F.3d 1262, 1269 (9th Cir. 2009) (quoting *Rhodes*, 408 F.3d at 567-68).

11        A "plaintiff must plead facts which suggest that retaliation for the exercise of protected

12   conduct was the 'substantial' or 'motivating' factor behind the defendant's conduct."  *Harpool v.*

13   *Beyer*, 2012 WL 4038444 at *11 (E.D. Cal. 2012), *referring to Soranno's Gasco, Inc., v. Morgan*, 874

14   F.2d 1310, 1314 (9th Cir. 1989).  In addition, an adverse action is one that "would chill or silence a

15   person of ordinary firmness from future First Amendment activities."  *White v. Lee*, 227 F.3d 1214,

16   1228 (9th Cir. 2000) (quoting *Mendocino Envtl. Center v. Mendocino County*, 192 F.3d 1283, 1300

17   (9th Cir. 1999)).

18        Defendants contend "there is no cognizable retaliation claim."  (Doc. 26 at 6.)  Defendants

19   assert that in the SAC, "the only alleged retaliatory action by the Correctional Officer Defendants was

20   their use of excessive force in attacking [Samaniego] on May 24, 2019."  (*Id.*) Defendants note

21   Samaniego alleged this retaliation occurred "because he exercised 'his constitutionally protected right

22   to question CDCR Correctional Officers regarding the scope of their legal authority to harass and abuse

23   his body and mind.'"  (*Id.*, quoting SAC ¶ 48 [Doc. 23 at 15].)  Defendants acknowledge that

24   Samaniego alleges retaliatory acts at KSVP "in the form of threats, verbal abuse, and with regard to his

25   medical needs, food preparation, housing assignments and receipt of mail," but maintain "none of this

26   is alleged to be the retaliatory action of any Defendant."  (*Id.*, n.2.)  Defendants conclude the

27   allegations in the SAC are insufficient because Samaniego "does not allege that he said anything to any

28   of the Defendants" or allege "any of the Defendants were aware of any protected speech or comments

1    that he made to others." (*Id.*)

2         Samaniego asserts that his "'actions' or triggering of his first amendment right to free speech

3    occurred when he gave his verbal statements to the CDCR personnel and when signed his name to

4    different investigatory and 602 complaint forms that were processed." (Doc. 28 at 2.) He contends

5    "[t]hose witness statements and complaint forms that describe what [he] was eyewitness to on

6    December 31, 2018." (*Id.*) According to Samaniego, "Not before 'injecting himself' into this

7    particular incident, by putting his name on a report, had [he] ever been subject to the violent, physical

8    and emotional abuse, harassment and retaliation which he has endured ever since." (*Id.*)

9         Notably, Samaniego does not clearly address Defendants' assertion that he failed to allege facts

10   that support a conclusion the alleged attack was done *because* Samaniego was identified as a witness to

11   the attack of Joe Nino. Although Samaniego alleges he "provided a statement regarding the beating of

12   CCI inmate Joe Nino, who filed a timely 602 claim," he does not assert any of the correctional officers

13   had knowledge of the 602 form or knew that Samaniego was identified as a witness. (*See* Doc. 23 at

14   10, ¶ 34.) Samaniego alleges only that "*Sullivan* knew of this beating and of Samaniego's involvement

15   as a witness because part of Sullivan's job duties as CCI Warden is to review such claim forms for

16   possible disciplinary actions that may be brought against CCI personnel." (*Id.*, emphasis added.)

17   Samaniego does not make similar allegations of knowledge of the "Individual Defendants," Officer

18   Mumby, or the "Doe" defendants. Without such allegations, Samaniego fails to allege facts to support

19   a retaliatory motivation in the reported May 2019 attack. *See Brodheim*, 584 F.3d at 1269; *see also*

20   *Flynn v. City of Santa Clara,* 388 F. Supp. 3d 1158, 1164-65 (N.D. Cal. 2019) (dismissing claims

21   against individual officers where there were no allegations they were aware of the plaintiff's First

22   Amendment activity, and rejecting the argument that officers without knowledge of protected activity

23   could be held liable for retaliation by acting "in concert" with ones with knowledge); *Bland v. Cox*,

24   2020 WL 3250739 at *3 (E.D. Cal. June 15, 2020) (to state a claim for retaliation, a prisoner must

25   allege "the adverse action was taken *because* the inmate engaged in protected conduct" [emphasis

26   added]). Therefore, Defendants' motion to dismiss the retaliation claim is granted.

27        **C.    Liability of the Wardens**

28        Under Section 1983, a plaintiff must allege that each defendant personally participated in the

12

1  deprivation of his rights. *Jones v. Williams*, 297 F.3d 930, 934 (9th Cir. 2002). The facts alleged must

2  be sufficient for the Court to conclude that each defendant, through his or her own individual actions,

3  violated Plaintiff's constitutional rights. *Iqbal*, 556 U.S. at 1948-49. Liability may not be imposed on

4  supervisory personnel under Section 1983 based on the theory of *respondeat superior*, as each

5  defendant is only liable for his or her own misconduct. *Id.*; *Ewing v. City of Stockton*, 588 F.3d 1218,

6  1235 (9th Cir. 2009).

7  1.  "Official capacity" claims

8  As an initial matter, the Court notes the caption of the SAC indicates Sullivan is sued "in his

9  personal/ individual /official capacity as Warden of the California Correctional Institution" and Pfeiffer

10  is sued in his "personal/ individual/ official capacity as Warden of the North Kern Valley State Prison."

11  (Doc. 23 at 1.) However, the Court previously found the claims against Sullivan and Pfeiffer for

12  monetary damages were barred by the Eleventh Amendment, and the claims against the wardens in

13  their official capacities were dismissed <u>without</u> leave to amend. (Doc. 22 at 7-8, 10.) Accordingly, to

14  the extent the SAC indicates Samaniego seeks to hold Sullivan and Pfeiffer liable in their official

15  capacities, such claims are stricken.

16  2.  Individual capacity and supervisor liability

17  Samaniego must allege facts sufficient to determine that Sullivan and Pfeiffer "participated in

18  or directed the violations, or knew of the violations and failed to act to prevent them." *See Taylor v.

19  List*, 880 F.2d 1040, 1045 (9th Cir. 1989); *accord Starr v. Baca,* 633 F.3d 1191, 1209 (9th Cir. 2011);

20  *see also Anderson v. Hansen*, 2013 WL 4676212 at *3 (E.D. Cal. Aug. 30, 2013) ("[a] prison official

21  may be held liable for failing to protect an inmate from a prison guard if he knew of an excessive risk

22  to inmate health or safety posed by the … prison guard and disregarded that risk"). Claims that "rely

23  upon claims of the general responsibility of the warden for prison operations that are insufficient to

24  establish Section 1983 liability." *Brown v. Perez*, 2016 WL 7975264 at *6 (C.D. Cal. Dec. 16, 2016).

25  a.  *Addressing individual capacity at the pleading stage*

26  Samaniego contends, "at the pleading stage, Plaintiff is not required to identify the specific

27  superficial 'individual capacity' of either defendant warden." (Doc. 28 at 5.) According to

28  Samaniego, capacity "is a question of fact requiring discovery, and is, thus, an inappropriate basis for

1  dismissal at the pleading stage."  (*Id.*, citing *Gurrola v. Jervis*, 2009 U.S. Dist. LEXIS 133234 at *24,

2  2009 WL 9548218 (C.D. Cal. April 2, 2009).)  Samaniego contends in *Gurrola,* the court indicated the

3  "capacity in which the employee or agent is acting in a such a role is a question of fact to be addressed

4  at the summary judgment stage."  *Id.*  Defendants contend the reliance upon *Gurrola* "is misplaced,"

5  because *Gurrola* did not address a Section 1983 claim or the issue of "official capacity claims being

6  barred as a matter of law."  (Doc. 29 at 4.)

7         As Defendants assert, the Central District did not address a claim arising under Section 1983 in

8  *Gurrola*.  Rather, the court addressed the doctrine of *respondeat superior* under California Law,

9  including the Fair Housing Act, the Unruh Civil Rights Act, and Fair Employment and Housing Act.

10 *Gurrola*, 2009 WL 9548218 at *6, *9-10 (observing "[t]here is no question that principles of

11 *respondeat superior* apply in the Fair Housing Act context;" "*[r]espondeat superior* does appear to be

12 an applicable liability theory, at least with respect to Plaintiffs' Unruh Civil Rights Act claim;" and the

13 doctrine was "plainly applicable in the FEHA context").  The court then indicated that whether an

14 individual was acting within the scope of his employment for purposes of invoking liability under the

15 doctrine of *respondeat superior* appeared "to be a fact question better left for the summary judgment

16 stage []at which time the parties can also address whether the traditional 'scope of employment'

17 analysis applies."  *Id.* at *10.

18        In contrast to the provisions of law addressed in *Gurrola*, the doctrine of *respondeat superior*

19 does not apply under Section 1983.  *Iqbal,* 556 U.S. at 676 ("Government officials may not be held

20 liable for the unconstitutional conduct of their subordinates under a theory of *respondeat superior*");

21 *see also Snow v. McDaniel,* 681 F.3d 978, 985 (9th Cir. 2012) ("Under Section 1983, supervisory

22 officials are not liable for actions of subordinates on any theory of vicarious liability"); *Jesus Christ*

23 *Prison Ministry v. Cal. Dep't of Corr.*, 456 F.Supp.2d 1188, 1196 (E.D. Cal. 2006) ("Supervisory

24 personnel … are not liable under § 1983 for the actions of their employees under a theory of

25 *respondeat superior*").  Because the doctrine of *respondeat superior* is inapplicable under Section

26 1983, Samaniego is unable to hold Wardens Sullivan and Pfeiffer liable for the actions of correctional

27 officers at the prisons based upon the doctrine of *respondeat superior*.  The Court agrees reliance upon

28 *Gurrola* is misplaced.

Moreover, contrary to Samaniego's assertion, courts may clearly address the capacity of defendants "at the pleading stage" when evaluating a claim under Section 1983, and determine whether the pleadings are sufficient to invoke liability for supervisory officials. *See, e.g.*, *Lee v. City of Los Angeles*, 250 F.3d 668, 697 n.6 (9th Cir. 2001) (explaining that "when plaintiffs sue public officials in their individual capacity under § 1983, [] to survive a Rule 12(b)(6) motion to dismiss, plaintiffs must state in their complaint nonconclusory allegations…" [citation omitted]); *Lex v. Wexford Health Source*, 2016 WL 302151, at *2 (N.D. Ill. Jan. 25, 2016) ("Section 1983 claims for monetary damages against state officials in their official capacity cannot survive the pleading stage because those state officials are not 'persons' for purposes of allowing suit under Section 1983").

### b.   *Sufficiency of the pleadings against the wardens*

Samaniego has not alleged facts sufficient to support his claims for constitutional violations by any of the named—or "Doe"—correctional officers.  As a result, his claims against the wardens also fail, to the extent they are based upon the theory of supervisory liability.  *See Corales v. Bennett*, 567 F.3d 554, 570 (9th Cir. 2009) (supervisor liability "is not sustainable" where the plaintiff fails to support an underlying constitutional violation); *Crawford v. Lappin*, 446 F. App'x 413, 416 (3d Cir. 2011) ("the absence of an underlying constitutional violation precludes any supervisory liability on a 'knowledge or acquiescence' or 'failure to train' theory"); *Elek v. Inc. Vill. of Monroe*, 815 F. Supp. 2d 801, 808 (S.D.N.Y. 2011) ("because plaintiff has not established any underlying constitutional violation, she cannot state a claim for 1983 supervisory liability") (collecting cases).  Even if Samaniego alleged facts sufficient to support his claims for excessive force and retaliation against the correctional officers, the allegations against Sullivan and Pfeiffer are insufficient to invoke liability in their individual capacity.

### i.   *Claim against Sullivan*

Samaniego alleges his "claims against Defendant Sullivan are based on his knowledge of the CDCR guidelines; and maintaining and permitting the practices, policies and customs under those guidelines and CDCR procedures for correctional facilities."  (Doc. 23 at 9, ¶ 33.)  He asserts that "Sullivan had direct, personal knowledge of rampant incidents, including numerous administrative 602 claims and lawsuits brought by inmates housed at CCI Tehachapi against CCI staff, primarily first line

Correctional Officers." (*Id.*)  Samaniego alleges Sullivan also "had direct, firsthand knowledge of the

widespread, constant beatings and use of excessive force by serial abusers, corrupt correctional

officers, who ruled the cell blocks and yards with intimidation, threats and oftentimes with brutal and

violent acts of physical abuse against defenseless inmates." (*Id.*)  According to Samaniego, "Sullivan

was aware of the December 31, 2018 incident that Samaniego witnessed and provided a statement

regarding the beating of CCI inmate Joe Nino, who filed a timely 602 claim." (*Id.* at 9-10, ¶ 34.)

Further, Samaniego alleges:

> Sullivan knew of this beating and of Samaniego's involvement as witness because
> part of Sullivan's job duties as CCI Warden is to review such claim forms for
> possible disciplinary actions that may be brought against CCI personnel. Sullivan
> knew that Samaniego's involvement as a witness to the systemic excessive force and
> retaliation undertaken by CCI's rogue Correctional Officers would undoubtedly "put
> a target" on Samaniego's back. It is undisputed that rogue, corrupt Correctional
> Officers at CCI inflict emotional trauma and sometime severe physical beatings on
> CCI inmates in hopes of "silencing" them into not coming forward as witnesses to
> reveal or expose the criminal activities of the very guards who are sworn to uphold
> the law and maintain order in the prison system. This is precisely what happened
> here. By coming forward to expose the rogue guards, Samaniego risked his life.

(*Id.* at 10, ¶ 34.)  He alleges Sullivan "ignored the target on Samaniego back and the clear danger to

his personal, physical well-being, by condoning, encouraging, fostering and/or ratifying the unlawful

conduct of said Defendants." (*Id.*)  In addition, Samaniego contends Sullivan "ratified the Individual

Defendants and Doe Defendants' unconstitutional conduct towards Plaintiff." (*Id.*)

The Ninth Circuit determined a plaintiff stated a cognizable claim against a supervisor where

he alleged that the sheriff knew of — and was specifically given official notice of — culpable uses of

force by subordinates prior to the alleged use of excessive force against the plaintiff and took no

preventative action.  *See Starr v. Baca*, 652 F.3d 1202, 1208-1209 (9th Cir. 2011).  The Court

observed there were "many allegations in the complaint detailing what Sheriff Baca knew or should

have known, and what Sheriff Baca did or failed to do." *Id.* at 1209.  Starr alleged Baca signed a

Memorandum of Understanding in 1999, which required him "to address and correct the continuous

constitutional violations to which inmates were being subjected." *Id.*  Starr also detailed numerous

instances of injuries to other named inmates that occurred after Baca signed the Memorandum of

Understanding. *Id.* at 1209-1212.  The Court noted Barr also received notice of all incidents, and Starr

alleged "Baca did not take action to protect inmates under his care despite the dangers, created by the

actions of his subordinates, of which he had been made aware." *Id.* at 1216.  The Court concluded the allegations "plausibly suggest that Sheriff Baca acquiesced in the unconstitutional conduct of his subordinates, and was thereby deliberately indifferent to the danger posed to Starr." *Id.* at 1216. Thus, the Court concluded Starr "sufficiently alleged under Rule 8(a) a supervisory liability claim of deliberate indifference against Sheriff Baca." *Id.* at 1217.

On the other hand, a general assertion that a supervisor knew of "systemic excessive force" by officers fails to support a claim.  For example, the Central District determined a plaintiff failed to state a claim against three associate wardens when the plaintiff asserted the wardens "knew of the 'systemic acts of excessive force on inmates' by the Green Wall prison officials and condoned them." *Windham v. Franklin*, 2014 WL 7740262, at *14 (C.D. Cal. Aug. 29, 2014).  The court explained, "Plaintiff's allegations that [the associate wardens] knew that prison officials used excessive force against inmates are too conclusory to constitute a basis for holding them personally liable for the force used against Plaintiff." *Id.*

Samaniego alleges that Sullivan knew of "systemic excessive force and retaliation" by "rogue, corrupt Correctional Officers."  (*Id.* at 10, ¶ 34.)  He also contends "Sullivan ratified the Individual Defendants and Doe Defendants' unconstitutional conduct toward Plaintiff."  (*Id.*)  However, the allegations in the SAC are again conclusory.  Samaniego does not identify other retaliatory incidents by correctional officers—let alone the defendant officers— to support the legal conclusion that Sullivan ratified their conduct.  *Compare with Starr*, 652 F.3d at 1208-1209.  Without such allegations, Samaniego fails to support his conclusion that the warden was aware of a risk of harm *to Samaniego* in retaliation for being identified as a witness in Nino's 602 claim.  *See Windham*, 2014 WL 7740262, at *14.

### ii.  Claim against Pfeiffer

Samaniego alleges his "claims against Defendant Pfeiffer are based on his knowledge of the CDCR guidelines; and maintaining and permitting the practices, policies and customs under those guidelines and CDCR procedures for correctional facilities."  (Doc. 23 at 11, ¶ 35.)  According to Samaniego, "Defendant Pfeiffer, as the official policy maker for KVSP, was aware of widespread beatings and use of excessive force at KVSP."  (*Id.*)  Samaniego asserts that "[s]ince his transfer to

1  KVSP, Samaniego has filed at least eight (8) 602 complaints involving charges against KVSP

2  Correctional Officers for: physical intimidation, denial of medical care, theft of personal property and

3  intentional placement of Samaniego in non[-]segregated housing, purposely putting his life in danger

4  as the corrupt Correctional Officers have enlisted assistance of STG inmates to intimidate and harm

5  Samaniego." (*Id.* at 12, ¶ 36.)  Samaniego asserts, "instead of taking proper steps to discipline

6  Individual Defendants and Doe Defendants 1 to 20, Defendant Pfeiffer has continued to condone,

7  encourage, foster and/or ratify the unlawful conduct of said Defendants." (*Id.*, ¶ 37.)  Further,

8  Samaniego alleges "Pfeiffer ratified the Individual Defendants and Doe Defendants' unlawful and

9  unconstitutional conduct towards Plaintiff." (*Id.*)

10      As the Court observed previously, Samaniego asserts the "Individual Defendants and Doe

11  Defendants brutally beat Plaintiff without justification on May 24, 2019." (Doc. 23 at 8, ¶ 31.)  Thus,

12  it appears all the correctional officers—both identified and "Does"—were employed at CCI

13  Tehachapi, and were not under the supervision of Warden Pfeiffer.  Again, it strains credulity to infer

14  that Pfeiffer, as the Warden of KSVP, had authority to discipline the correctional officers employed at

15  a different facility as Samaniego suggests in the SAC.  Indeed, in his opposition to the motion to

16  dismiss, Samaniego admits that "Pfeiffer cannot be held liable for any involvement in or injuries

17  sustained from the May 24, 2019 CCI incident." (*Id.* at 9.)  However, Samaniego maintains "Pfeiffer

18  can be subject to liability for his ongoing ignorance or 'deliberate indifference' of Plaintiff's plight

19  and constant abuse and retaliation while he was housed at KVSP." (*Id.*)

20      Significantly, although Samaniego contends that he has suffered "retaliatory tactics" at KSVP,

21  there are no facts alleged supporting a conclusion that the described acts at KSVP were in retaliation

22  for Samaniego's protected conduct at CCI.  For example, there are no allegations that the correctional

23  officers at KSVP who committed the acts complained of by Samaniego in his 602 claims knew

24  Samaniego was identified as a witness in a 602 claim submitted at CCI.  Without such knowledge, the

25  acts could not be "retaliatory," and supervisor liability cannot be imposed upon Pfeiffer for a violation

26  of the First Amendment.  *See Flynn,* 388 F. Supp. 3d at 1164-65 (dismissing claims where there were

27  no allegations officers were aware of the plaintiff's protected First Amendment activity); *Hammler v.*

28  *Alvarez,* 2019 WL 422575, at *9 (S.D. Cal. Feb. 4, 2019) ("Because Plaintiff alleges no facts to show

1   that [defendant] had any prior knowledge of this grievance, there are no facts to suggest that [the

2   officer] issued the RVR *in retaliation*…") (emphasis added).

3           3.     Qualified immunity

4         Defendants contend, "If for any reason the Court determines that Plaintiff has stated a

5   cognizable claim against the Warden Defendants, they are entitled to qualified immunity."  (Doc. 26 at

6   9.)  Because the Court finds Samaniego did not allege facts sufficient to impose supervisor liability, as

7   set forth above, the Court declines to address the matter of qualified immunity.

8       **D.**    **"Doe" Defendants**

9         Defendants contend the "Doe" defendants should be dismissed because "Doe pleading is

10   improper in federal court."  (Doc. 26 at 12, citing *Othman v. Globe Indem. Co*., 759 F.2d 1458, 1463

11   (9th Cir. 1985) ["Generally, Doe pleading is improper in federal court…"].)  Samaniego does not

12   address this argument in his opposition to the motion to dismiss.  (*See generally* Doc. 28 at 4-12.)

13         In the federal court, the use of "Doe" pleading is generally disfavored, but is not completely

14   prohibited.  *See Gillespie v. Civiletti,* 629 F.2d 637, 642 (9th Cir. 1980) (observing that "the use of

15   'John Doe' to identify a defendant is not favored," but "[s]ituations may arise … where the identity of

16   alleged defendants will not be known prior to the filing of a complaint"); *Wakefield v. Thompson*, 177

17   F.3d 1160, 1163 (9th Cir. 1999) ("the district court erred in dismissing Wakefield's complaint against

18   Doe simply because Wakefield was not aware of Doe's identity at the time he filed his complaint");

19   *Lopes v. Vieira*, 543 F. Supp.2d 1149, 1152 (E.D. Cal. 2008).  The Ninth Circuit explained, "the

20   plaintiff should be given an opportunity through discovery to identify the unknown defendants, unless

21   it is clear that discovery would not uncover the identities, or that the complaint would be dismissed on

22   other grounds."  *Gillespie,* 629 F.2d at 642.

23         A plaintiff must plead how each of the identified— though unnamed—defendants has violated

24   his rights.  *See Jones*, 297 F.3d at 934 (under Section 1983, plaintiff must demonstrate that each named

25   defendant personally participated in the deprivation of his rights); *Leer v. Murphy*, 844 F.2d 628, 634

26   (9th Cir. 1988) (to state a cognizable claim, a plaintiff must set forth specific factual allegations

27   demonstrating how each defendant violated his rights).  Because Samaniego fails to allege facts

28   sufficient for the Court to determine which defendant took what action, he also fails to state claims

1  against the "Doe" correctional officers.  Defendants' unopposed request to dismiss the claims against

2  the "Doe" defendants is granted.

3  **V.      Leave to Amend**

4          Samaniego requests that if dismissal is granted, then leave to amend be granted.  (Doc. 28 at

5  12.)  Pursuant to Rule 15 of the Federal Rules of Civil Procedure, leave to amend "shall be freely

6  given when justice so requires," bearing in mind "the underlying purpose of Rule 15 to facilitate

7  decisions on the merits, rather than on the pleadings or technicalities."  *Lopez v. Smith*, 203 F.3d 1122,

8  1127 (9th Cir. 2000) (alterations, internal quotation marks omitted).  When dismissing a complaint for

9  failure to state a claim, "a district court should grant leave to amend even if no request to amend the

10  pleading was made, unless it determines that the pleading could not possibly be cured by the allegation

11  of other facts." *Id*. at 1130 (internal quotation marks omitted).  Accordingly, leave to amend generally

12  shall be denied only if allowing amendment would unduly prejudice the opposing party, cause undue

13  delay, or be futile, or if the moving party has acted in bad faith.  *Leadsinger, Inc. v. BMG Music*

14  *Publishing*, 512 F.3d 522, 532 (9th Cir. 2008).

15          Leave to amend the claims against the "Individual Defendants," Officer Mumby, and the "Doe

16  Defendants" is appropriate, because it would allow Samaniego to clarify the actions attributed to the

17  individuals involved in the cell extraction.  In addition, Samaniego may clarify whether he believes all

18  defendants used force against him, or if he seeks to impose liability against correctional officers for

19  "failure to protect" him during the alleged staged extraction.  Thus, the request for leave to amend the

20  claims against the correctional officers, both named and unnamed, is granted.

21          On the other hand, the Court notes Samaniego was previously granted leave to amend the

22  claims against Sullivan and Pfeiffer.  (*See* Doc. 22 at 9.)  At that time, the Court determined the

23  allegations were insufficient related to support a conclusion that the wardens knew of a risk to

24  Samaniego and ratified the conduct of the correctional officers.  (*Id.* at 6-7, 9.)  Given the sparsity of

25  the allegations related to the underlying violations, it appears Samaniego may be able to allege

26  additional facts to support his claims.  Allowing amendment as to the Warden Defendants would not

27  cause undue delay at this juncture, as leave to amend as to the other defendants is granted, and there is

28  no evidence Samaniego acted in bad faith.  Therefore, the request for leave to amend will be granted

as to the Warden Defendants, and Samaniego will be given **one final opportunity** to allege facts sufficient to support his claims against Sullivan and Pfeiffer.  If he again fails to cure the pleading deficiencies, the Court will find his unable to do so and further amendment would be futile.  *See, e,g.*, *Zucco Partners, LLC v. Digimarc Corp.,* 552 F.3d 981, 1008 (9th Cir. 2009) ("repeated failure to cure deficiencies" constitutes "a strong indication that the [plaintiff] has no additional facts to plead" and "that any attempt to amend would be futile").

## VI.     Conclusion and Order

Based upon the foregoing, the Court **ORDERS**:

1.      Defendants' motion to dismiss (Doc. 26) is **GRANTED**.

2.      The Second Amended Complaint is **DISMISSED** with leave to amend.

3.      Plaintiff **SHALL** file a Third Amended Complaint within 45 days of the date of service of this order.

**Failure to file the amended complaint as ordered will result in the action being dismissed without prejudice for failure to prosecute and failure to obey the Court's order.**

IT IS SO ORDERED.

Dated:   **June 17, 2022**

_____
UNITED STATES DISTRICT JUDGE

21