**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| IVAN SAMANIEGO, | Case No. 1:21-cv-00839 JLT CDB |
| Plaintiff, | ORDER GRANTING MOTION FOR PARTIAL SUMMARY JUDGMENT AND SETTING FINAL PRETRIAL CONFERENCE |
| v. | |
| CALIFORNIA DEPARTMENT OF CORRECTIONS AND REHABILITATIONS, et. al., | (Doc. 71) |
| Defendants. | |

Ivan Samaniego is an inmate in the custody of the California Department of Corrections and Rehabilitation. He is pursuing civil rights claims against several correctional officers and prison staff members in this action, with representation by counsel. The defendants seek partial summary judgment. They argue Samaniego did not pursue all of his claims through to a final resolution within the prison system before he filed this case, as required by the Prison Litigation Reform Act. As explained in this order, they have established this affirmative defense beyond any genuine dispute. The motion is **GRANTED**.

### UNDISPUTED FACTS

Samaniego alleges he came forward as a witness against a number of correctional officers who assaulted a fellow inmate many years ago, in late 2018. (Doc. 47 ¶ 30.) The defendants in this case include several officers and other staff members who worked in the facility where

1

Samaniego was housed at that time, including two of the officers who, by his account, were part of the assault on the other inmate. (*See id.* ¶¶ 2–23, 32–40.) Samaniego alleges the defendants attacked and sexually assaulted him in retaliation for coming forward as a witness. (*See id.* ¶¶ 30–31.) He does not allege that all of them participated directly in the alleged attack or sexual assault, but according to his complaint, the defendants who did not directly participate could have intervened to protect him but did not do so. (*See id.* ¶¶ 42, 45.) His legal claims are based on 42 U.S.C. § 1983, the Eighth Amendment, and the First Amendment. (*Id.* ¶¶ 42–66).

The defendants have denied Samaniego's allegations (*see* Doc. 48 at 1–2), and the deadlines for discovery have passed (*see* Docs. 51, 66, 70). They argue it is now clear that they are entitled to judgment on Samaniego's claims of retaliation and failure to intervene or protect (but not excessive force). Their motion rests on two arguments. First, they contend Samaniego did not file an internal prison grievance about retaliation or failures to intervene, as the PLRA requires. Second, they argue that he could not prove they had any retaliatory motives. Samaniego opposes the motion. (Doc. 72.)

For the most part, the relevant evidence is undisputed. The earliest potentially relevant evidence in the current record is an excerpt from Samaniego's medical records, which he cites in opposition to the pending motion. (*See* Doc. 72 at 23–26.) According to those excerpts, he asked to see a psychologist in May 2019 because he was feeling depressed, anxious, and overwhelmed. (Doc. 72 at 24–25.) This was several months after Samaniego alleges that he saw officers attacking another inmate, and it was a few days before he says the defendants in this case attacked and assaulted him. (*See id.*) Interview notes report that he told a psychologist he felt like correctional officers were targeting him and trying to get him in "trouble." (*Id.* at 25.) According to these notes, Samaniego described a few recent events that might have contributed to his sense that he was being targeted, but he did not mention any previous attacks on other inmates, did not describe any past statements he gave as a witness, and did not connect his concerns to any claims he had made against any officers in the past. (*See id.* at 24–26.)

Next, the record includes internal prison grievance forms Samaniego filled out about a month later, in June 2019, after officers had allegedly attacked him. (Docs. 71-4 at 13–16; 72 at

2

16–18.)  He claimed in these forms that correctional officers had used "excessive force" and had falsified reports, all in violation of federal and state laws and regulations.  (*Id.*)  These claims were based on his allegations that an officer threatened him, leading to a "verbal altercation with staff" at the door of his cell.  (*Id.*)  After this "altercation," he alleged several officers "sprayed" him through the food port in the cell door, then forced their way in under the pretense that they suspected he was attempting suicide.  (*Id.*)  He claimed they "rushed" in, beat him severely, and took him to Receiving and Release, where they inserted a "foreign object" or "objects" into his rectum.  (*Id.*)  He asked prison administrators for help identifying the officers involved, for an unbiased investigation, for a video-recorded interview, and for a transfer to a different facility to protect his "health and safety from retaliation."  (*Id.*)  He did not allege any officers, supervisors, medical personnel, or other staff members stood aside when they should instead have intervened. He did not allege the attack was in retaliation for something he had done or said in the past.  He did not mention the 2018 assault on the other inmate.  Prison administrators considered his claims and allegations, conducted an investigation, and concluded that officers had not engaged in any misconduct.  (*See* Docs. 71-4 at 1–5, 11–21; 74 at 15–27.)

The defendants have produced several other prison records as well, including a number of other grievance forms, but they do not believe—and Samaniego does not contend—that he could rely on these additional materials to show that he satisfied his obligations under the PLRA.  (*See id.* at 3–5, 38–69.)  He contends only that these additional records could show he has been the victim of an ongoing campaign of retribution.  (*See* Doc. 72 at 4.)  Each defendant has also submitted a declaration.  (*See* Docs. 71-5 to 71-18.)  According to these declarations, they would each testify at trial that they did not act in retaliation, did not know at the time that Samaniego had come forward as a witness in connection with another inmate's claims of excessive force, and did not know whether Samaniego had previously submitted any internal grievances.  *See id.*

### SUMMARY JUDGMENT AND EXHAUSTION

The PLRA "requires prisoners with complaints about prison conditions to exhaust available grievance procedures before bringing suit in federal court."  *Perttu v. Richards*, 605 U.S. 460, 464 (2025) (citing 42 U.S.C. § 1997e(a)).  Congress imposed this requirement in an

3

attempt "improve the quality of prisoner suits" by stemming the tide of what the Supreme Court has described as a "flood of nonmeritorious claims." *Id.* (first quoting *Porter v. Nussle*, 534 U.S. 516, 524 (2002), then quoting *Jones v. Bock*, 549 U.S. 199, 203 (2007)).

If a defendant believes a plaintiff has not "exhausted" a particular issue or claim by first pursuing an administrative remedy within the prison system, then he may raise that failure in his answer and prove it as an affirmative defense at trial. *See id.* at 469 (2025); *Albino v. Baca*, 747 F.3d 1162, 1166, 1171 (9th Cir. 2014). Because it would ultimately be a defendant's burden to prove this defense at trial, a summary judgment motion based on the exhaustion requirement must establish the defense beyond any genuine dispute. *See Albino*, 747 F.3d at 1172. More specifically, the moving defendant must cite portions of the record proving beyond any genuine dispute that an administrative remedy was available and that the plaintiff did not exhaust that remedy. *Id.* The plaintiff can avoid summary judgment by identifying evidence that creates a genuine dispute of material fact on either point, such as evidence that could allow a reasonable factfinder to conclude "that there is something in his particular case that made the existing and generally available administrative remedies effectively unavailable to him." *Id.* On the bottom line, "[i]f undisputed evidence viewed in the light most favorable to the prisoner shows a failure to exhaust, a defendant is entitled to summary judgment under Rule 56." *Id.* at 1166.

**DISCUSSION**

There is no dispute that an administrative remedy was generally available to Samaniego within the prison system. At the time, the California Department of Corrections and Rehabilitation had a three-level review process for inmate grievances. *Fordley v. Lizarraga*, 18 F.4th 344, 352–53 (9th Cir. 2021); *Reyes v. Smith*, 810 F.3d 654, 657 (9th Cir. 2016). The defendants have also established beyond dispute that this process was available to Samaniego as a practical matter. He does not contend otherwise, and he took advantage of the internal process when he pursued his claim of excessive force, as summarized above. The parties disagree only whether he also raised his other claims, i.e., that the defendants were acting in retaliation and that some of them are liable because they did not intervene to protect him.

A grievance must include enough information to alert prison officials "to the nature of the

4

wrong for which redress is sought." *Sapp v. Kimbrell*, 623 F.3d 813, 824 (9th Cir. 2010) (quoting *Griffin v. Arpaio*, 557 F.3d 1117, 1120 (9th Cir. 2009)).  It is not necessary for an inmate to "include legal terminology or legal theories unless they are in some way needed to provide notice of the harm being grieved." *Griffin*, 557 F.3d at 1120.  The PLRA does not demand that plaintiffs list "every fact necessary to prove each element of an eventual legal claim." *Id.*  "The primary purpose of a grievance is to alert the prison to a problem and facilitate its resolution, not to lay groundwork for litigation." *Id.*  But a grievance must include "enough information to allow prison officials to take appropriate responsive measures." *Id.* (alteration omitted) (quoting *Johnson v. Testman*, 380 F.3d 691, 697 (2d Cir. 2004)).

The defendants rely on the Ninth Circuit's opinions in *Griffin* and *Sapp* to support their argument that Samaniego's grievances fell short.  (*See* Doc. 71-1 at 14).  The Court agrees those opinions are controlling and demonstrate that the defendants are entitled to partial summary judgment: although Samaniego's claims of excessive force, retaliation, and failures to intervene are all related to one another, he exhausted only his excessive force claims.

In *Griffin*, an inmate assigned to an upper bunk fell and was injured while he was trying to reach it.  557 F.3d at 1118–19.  He asked for a ladder or some sort of permanent step in an internal prison grievance.  *Id.* at 1118.  While officials reviewed this request, a nurse assigned him to a lower bunk, so the reviewing officials concluded that the problem had been solved and took no further action.  *See id.* at 1119.  The plaintiff inmate eventually filed civil rights claims under § 1983 based on a new allegation: staff members had ignored the nurse's order to assign him to a lower bunk.  *See id.*  The Ninth Circuit held that he had not exhausted this new claim.  *Id.* at 1121.  His internal complaints had all focused on his repeated requests for a ladder, not his allegations that staff had ignored the nurse's order to put him in a lower bunk.  *Id.*  The grievances were closely related to be sure, but complaints about a ladder or a step are different from complaints about staff members ignoring a nurse's order.  *See id.*  He had not given prison officials a chance to look into the second problem.  *See id.*

The court's opinion in *Sapp* includes similar reasoning.  An inmate had an eye injury and had repeatedly sought medical treatment for it within the prison system.  623 F.3d at 818.  He

pursued three claims in federal court: he alleged a doctor had wrongfully denied his requests for treatment, he alleged a prison official had wrongfully refused his request to review his medical records, and he alleged an appeals coordinator had repeatedly and wrongfully rejected his internal appeals. *See id.* at 818–20.  He had pursued several internal complaints, appeals, and grievances about his treatment and the doctor's decision, but he had not brought his complaints about medical records or the appeals coordinator to the attention of prison officials, at least not all the way through to a final disposition. *See id.* at 824–25.  As in *Griffin*, the Circuit concluded that although these claims were related to one another, the plaintiff could pursue only one of them in federal court—his claim that the doctor had wrongfully denied care—because that was the only claim that he had permitted the prison to consider and address. *See id.*

As the defendants point out in their reply, district courts within the Ninth Circuit have relied on these decisions to hold that inmates do not exhaust claims of retaliation automatically or implicitly by filing grievances about other related events.  (*See* Doc. 74 at 3–4.)  In one similar case, the plaintiff alleged staff members had not allowed him to take regular showers and had told him to clean himself with toilet water instead. *Patkins v. Alomari*, No. 14-674, 2017 WL 345158, at *3–4 (E.D. Cal. Jan. 23, 2017), *findings & recommendations adopted in full*, No. 14-674 (Mar. 24, 2017), Doc. 47.  He also alleged that guards had retaliated against him by ransacking his cell the day after he filed his grievance. *Id.*  In his internal grievances, he had asked prison officials to ensure he could take regular showers in an internal grievance from, but he had mentioned retaliation only briefly, in passing, without explaining what protected activity had prompted the retaliation, what form it had taken, or what harm it had caused. *See id.*  This did not suffice; the defendants were entitled to summary judgment on the retaliation allegations. *See id.*

This case is not meaningfully distinguishable.  Samaniego filled out two internal grievances related to the allegedly retaliatory attack and sexual assault.  (*See* Doc. 72 at 15–22.)  In neither did he allege that officers had attacked him in retaliation for coming forward as a witness or for any other reason.  He mentioned retaliation only to describe the remedy he was seeking, i.e., measures designed to prevent anyone from retaliating against him for pursuing his internal complaint.  In neither of his internal grievances did he allege that other officers or other

6

staff members had seen the attack and the sexual assault but had done nothing about it. In sum, his grievances did not include enough information to alert prison officials "to the nature of the wrong" or to "take appropriate responsive measures" in response. *Griffin*, 557 F.3d at 1120 (citation and quotation marks omitted). He did not exhaust those claims.

Although Samaniego filed other grievances, he agrees they "do not relate directly" the alleged attack and sexual assault, but might serve as circumstantial evidence of a retaliatory motive. (Doc. 72 at 5–6.) It is not necessary to decide whether they could, as the defendants have established beyond dispute that Samaniego did not pursue his retaliation claims within the prison system, as the PLRA requires. Samaniego also cites his medical records, as noted above. (*Id.* at 5.) He identifies no statutes, regulations, or judicial decisions under which a presumably confidential conversation with a mental health professional could exhaust a claim for purposes of the PLRA, and the Court is aware of none. It is not necessary to dwell on the issue, however, as the medical records do not support Samaniego's position on their own terms. As discussed above, they could not show that Samaniego reported any fears or suspicions that correctional officers would retaliate against him for serving as a witness in connection with any previous assault or attack. They would instead show he attributed his fears and distress to other causes.

Samaniego asks in the alternative for more time to seek additional evidence under Rule 56(d). (*See* Doc. 72 at 11–12.) Under that rule, the court may "defer" its consideration of a summary judgment motion and permit additional discovery "[i]f a movant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition." Fed. R. Civ. P. 56(d). Courts deny requests for additional discovery under this rule if the requesting party does not explain why it did not pursue previous opportunities for discovery or why the missing evidence would prevent summary judgment. *See Emps. Teamsters Local Nos. 175 & 505 Pension Trust Fund v. Clorox Co.*, 353 F.3d 1125, 1129–30 (9th Cir. 2004); *Qualls By & Through Qualls v. Blue Cross of Cal., Inc.*, 22 F.3d 839, 844 (9th Cir. 1994). Samaniego asks for permission to depose an examiner who rejected one of his internal appeals. (*See* Doc. 72 at 14.) He does not explain why he did not conduct this deposition before now or why any testimony by the appeals examiner would preclude summary judgment. *See id.* The Court will

7

not defer consideration of the pending motion to permit the deposition.

Finally, Samaniego objects that the defendants have not demonstrated that the relevant prison records could be admitted at trial. (*See* Doc. 73 at 2–3.) A district court cannot grant summary judgment on the basis of inadmissible evidence, *see Burch v. Regents of Univ. of Cal.*, 433 F. Supp. 2d 1110, 1121 (E.D. Cal. 2006), but Samaniego's evidentiary objections are meritless. The defendants attached the records in question to a declaration by the Associate Director of the Office of the Appeals. (Doc. 71-4 at 1.) He explains in his declaration that he has responsibility to administer the prison grievance program and appeals process, that he is familiar with the relevant records, that they were created and preserved in the ordinary course of business, and that he found the records after conducting a search for all of the appeals that Samaniego filed during the relevant period. (*Id.* at 1–4.) These statements are undisputed and establish that the records would be admissible at trial. *See, e.g.*, Fed. R. Evid. 803(6), 901(b)(1), 901(b)(9), 902(13).

In sum, because the defendants have demonstrated beyond dispute that Samaniego did not exhaust his claims of retaliation and failures to intervene and protect, they are entitled to partial summary judgment of those claims. It is not necessary to decide whether Samaniego could successfully pursue those claims at trial. The Court does not reach that question, and it does not consider whether Samaniego should be permitted to seek additional discovery related to his unexhausted claims. (*See* Doc. 72 at 13–14.)

**CONCLUSION**

Based on the foregoing, the Court **ORDERS**:

1. The motion for partial summary judgment (ECF No. 71) is **GRANTED**. The matter will proceed only on Plaintiff's Eighth Amendment excessive force claims against Defendants Mumby, Perez, Castillo, Luque, Gray, Zavaleta, Weiss, Harris, Cervantes, and Davis.

///

///

///

///

8

2.      The Court sets this matter for trial on **September 1, 2026** at 8:30 a.m. The Court sets a pretrial conference on **June 29, 2026** at 1:30 via Zoom. The Court will provide Zoom details as the date approaches. **No later than June 8, 2026**, the parties **SHALL** file their joint pretrial statement as required by Local Rule 283.

IT IS SO ORDERED.

Dated:     **March 12, 2026**

UNITED STATES DISTRICT JUDGE

9